**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Huber And Sons, Inc., Paul Huber, and Lisa Huber,

Plaintiffs,

v.

Civ. No. 01-1583 (RHK/AJB)
**MEMORANDUM OPINION AND ORDER**

Service Corporation International,

Defendant.

---

Michael D. Schwartz and Travis D. Stottler, Michael D. Schwartz, P.A., Chanhassen, Minnesota, for Plaintiffs.

Steven E. Rau and Cory Kallheim, Flynn, Gaskins & Bennett, L.L.P., Minneapolis, Minnesota, for Defendant.

---

## Introduction

Plaintiffs Paul and Lisa Huber own or lease parcels of real estate in the Twin Cities that they, in turn, lease to Plaintiff Huber & Sons, Inc., a Minnesota corporation that does business as "Huber Funeral Homes."[1] (Am. Compl. ¶¶ 1, 3.) Defendant Service Corporation International ("SCI") provides "death care services," operating funeral homes, cemeteries, and crematoria around the country. (Id. ¶¶ 2, 4.) Beginning in 1994, SCI began to discuss with the Plaintiffs the possibility of purchasing the Huber Funeral

---

[1] Paul Huber is the primary shareholder of Huber and Sons, Inc. (Amended Compl. ¶ 3.)



JUN 1 7 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Homes. (Id. ¶¶ 7-9.) In November 1998, the parties signed a Letter of Intent setting forth "the basic terms" of SCI's proposed purchase of the capital stock of Huber & Sons and the real estate used in operating funeral homes in Mound and Eden Prairie, Minnesota.

On February 1999, SCI sent a letter to the Hubers terminating the Letter of Intent, and the parties did not close on the sale of the Huber Funeral Homes. The Plaintiffs brought suit in this Court pursuant to the Court's diversity jurisdiction, alleging that SCI made intentional and/or negligent misrepresentations during their negotiations, and breached an express or implied contract to purchase the Huber Funeral Homes. The Plaintiffs also assert claims of promissory estoppel and equitable estoppel. After filing its Answer to the Amended Complaint, SCI brought a Motion for a Partial Judgment on the Pleadings, seeking dismissal of the breach of contract, equitable estoppel and promissory estoppel claims. For the reasons set forth below, the Court will deny the motion.[2]

## Background

In May 1994, the Hubers received letters from Lawrence Hauge, a representative of SCI's Great Lakes region, proposing a meeting to discuss the possible purchase of Huber Funeral Homes by SCI. (Am. Compl. ¶ 7.) The next month, the Hubers met with Hauge and the Great Lakes regional president of SCI. (Id. ¶ 8.) After that meeting, the Hubers received letters from Hauge discussing SCI's desire and ability to purchase Huber

[2] The Court has reviewed the written submissions of the parties and is satisfied that oral argument would not materially assist in the resolution of the pending motion. Accordingly, the June 21, 2002 hearing is hereby canceled.

Funeral Homes. (Id. ¶ 9.)

It appears that, after the Hubers' initial meeting with SCI representatives in June 1994, there were no significant developments in the parties' negotiations until June 1998. (Id. ¶¶ 9-10.) On June 25, 1998, the Hubers met with another SCI representative and received a written proposal and written representations regarding "SCI's revenues, gross margins, income from operations, operating margins, financial growth, operating profits, and net profits." (Id. ¶ 10.) SCI provided the Hubers with several documents and financial statements through which, together with letters and statements made at meetings, SCI represented to the Hubers that

- there had not been any material adverse change in SCI's financial condition since the March 28, 1996 Prospectus;
- SCI was a quality operation;
- SCI had proper operation of an increasing number of quality facilities;
- SCI had unchallenged financial strength;
- SCI had the intention to consummate the acquisition of Huber Funeral Homes;
- SCI had the corporation authorizations to consummate the acquisition of Huber Funeral Homes; and
- SCI had the financial ability to consummate the acquisition of Huber Funeral Homes.

(Id. ¶ 11).

On November 6, 1998, the Hubers agreed to, accepted, and executed a Letter of Intent ("Letter"). (Id. ¶ 15; Answer to Am. Compl. Ex. A.) The Letter, addressed to Paul Huber, states that it

> sets forth the basic terms between Service Corporation International ("Buyer") and you ("Seller") regarding the purchase of 100% of the outstanding capital stock of Huber & Sons, Inc. (the "Company") and the real estate currently utilized in the operation of the business in Mound and Eden Prairie, MN (the "Real Estate"). ***Except as specifically set forth herein, this Letter of Intent shall not constitute an agreement between the parties and no agreement shall be deemed to exist until execution of a definitive agreement.***

(Answer to Am. Compl. Ex. A (emphasis added).) The Letter states that it evidences the parties' intentions with respect to several other agreements, including SCI's intent to enter into employment agreements with Paul and Lisa Huber, SCI's intent to pay the Hubers for covenants not to compete, and SCI's intent to arrange for real estate surveys and other inspections for the properties involved in the transaction. (Id.) The Letter then lists five things on which the transaction described therein was expressly conditioned:

1. The parties having entered into definitive agreements;
2. There being no material adverse change in the financial condition, physical condition or operations of the Company or the Real Estate, and no dividends, other distributions to shareholders or redemptions by Company from December 31, 1997 to the date of closing except as disclosed in the financial statements and as permitted by law;
3. There being no material adverse change in the financial condition or operations of Buyer from June 30, 1998 to the date of closing;
4. Additional due diligence as Buyer deems reasonably necessary; and

> 5. Approval by the Executive Committee of the Board of Directors of Buyer no later than December 9, 1998.

(Id.) Finally, the Letter identifies several paragraphs that, upon execution by Huber, were to "constitute legally binding and enforceable agreements of Buyer and Seller." (Id.) These "legally binding and enforceable agreements" had a term of ninety days from the date Huber signed the Letter, "continu[ing] thereafter until terminated by either party following 15 days prior written notice." The agreements are as follows:

> The closing will take place no earlier than 50 days from execution of this Letter of Intent and no later than the earlier of 180 days from the execution of this Letter of Intent or 90 days from execution of the definitive agreements.
>
> During the term hereof, neither Seller nor the Company, including its officers, directors and employees, will directly or indirectly solicit, initiate, or participate in discussions or negotiations with any person or company other than Buyer concerning any merger, consolidation, sale, liquidation or similar transaction involving the Real Estate the Company or its stock. During such time, the Company will conduct its business in the ordinary course without any material change in operations.
>
> During the term hereof, both Buyer and Seller agree to use their reasonable efforts to negotiate in good faith and execute definitive agreements with commercially reasonably terms carrying out the intent of this Letter of Intent and to consummate the transactions described above.
>
> Prior to the parties entering into the contemplated definitive agreements, both Buyer and Seller shall use their reasonable efforts to retain the confidentiality of these negotiations and of the proposed transaction and no disclosures will be made to any third parties of the proposed transaction until such definitive agreements have been executed and thereafter only upon mutual agreement of Buyer and Seller.

(Id.)

The Hubers abided by the "no-shop" provision in the Letter and, in so doing, lost offers, opportunities, and market value for the sale of Huber Funeral Homes. (Am. Compl. ¶ 18.) On January 19, 1999, the Executive Committee for SCI approved the purchase of the outstanding capital stock and the real estate used in the operation of Huber Funeral Homes' business in Mound and Eden Prairie. (Id. ¶ 30.) On February 17, 1999, however, SCI purported to terminate the agreement to purchase Huber Funeral Homes, Inc., allegedly due to changes in the market and changes in the industry. (Id. ¶ 17.) This lawsuit followed.

## Analysis

## I. Standard of Decision

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings may not be granted unless the moving party clearly establishes that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law. See National Car Rental Sys., Inc. v. Computer Assocs. Int'l. Inc., 991 F.2d 426, 428 (8th Cir.1993). In determining whether material issues of fact exist, the court must accept all facts pled by the non-moving party as true and draw all reasonable inferences in favor of the non-moving party. See Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir.1990).

Any facts alleged for the first time in the defendant's Answer must be treated as

denied because no responsive pleading to the Answer is required. See Fed. R. Civ. P. 8(d). Therefore, new factual matter alleged in the Answer presents material issues of fact, for purposes of a Rule 12(c) analysis. See 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 1368. SCI has affirmatively alleged that it had a right to terminate the Letter of Intent, as set forth therein, and that it exercised that right by sending by a letter to the Hubers dated February 17, 1999. (Answer to Amended Compl. ¶ 18.) SCI attached a copy of the February 17, 1999 letter to its Answer as Exhibit B. It has also alleged conduct that occurred after February 17, 1999. Given the procedural posture of the present motion, these facts cannot be deemed established for purposes of the Rule 12(c) motion.

The Plaintiffs in this case have opposed SCI's motion by submitting, together with their brief, the Affidavits of Paul Huber and attorney Michael Schwartz. Attached to Mr. Schwartz's affidavit are several letters between the parties, only two of which are identified in the Amended Complaint: a June 23, 1994 letter from Lawrence Hauge to Paul Huber, and the November 1998 Letter of Intent.[3] Where affidavits or exhibits are

---

[3] Mr. Schwartz also attached to his affidavit a copy of a 71-page "Consolidated Class Action Complaint" filed in September 1999 against SCI in the United States District Court for the Southern District of Texas, alleging violations of federal securities laws. Schwartz argues that the class action complaint "discusse[s] at length" both "SCI's true financial condition and the misrepresentations" that the Plaintiffs in this case allege SCI made to them concerning its financial condition. (See Pls.' Mem. Opp'n Mot. for Partial J. on the Pleadings at 8.) The complaint, however, merely contains allegations that are entitled to no evidentiary weight. The Court will not, in any event, consider it.

filed presenting facts outside the pleadings, the Court may either (a) exclude the information or (b) convert the motion to one for partial summary judgment under Rule 56, giving the opposing party a reasonable opportunity to present all materials pertinent to such a motion. See Fed. R. Civ. P. 12(c). Having reviewed the record before it, the Court concludes that it will not convert the pending motion to onc for summary judgment.

## II. Breach of Contract

Plaintiffs have framed their claim for breach of contract in the alternative, alleging both the breach of an express contract and the breach of an implied contract:

> 30. Defendant expressly contracted with Hubers and agreed to purchase 100% of the outstanding capital stock and the real property utilized in the operation of the business in Mound, Minnesota and Eden Prairie, Minnesota pursuant to the November 2, 1998 Letter of Intent, the January 19, 1999 Executive Committee approval and related documents and conduct.
>
> 31. Defendant impliedly contracted with Hubers and agreed to purchase 100% of the outstanding capital stock and the real property utilized in the operation of the business in Mound, Minnesota and Eden Prairie, Minnesota.
>
> *****
>
> 33. Defendant has breach its contract with Hubers by failing to fully perform with regards to the purchase of Huber Funeral Homes.

(Am. Compl. ¶¶ 30-31, 33.) SCI argues that, as a matter of law, the November 6, 1998 Letter of Intent is not an enforceable agreement, despite its detailed language regarding the contemplated purchase price and other terms. SCI characterizes the Letter of Intent as being simply an agreement to negotiate in the future, which cannot serve as the basis of a

contract action under Minnesota law.

Under Minnesota law, no contract is formed by the signing of an instrument when one party knows that the other does not intend to be bound by the document. Hamilton v. Boyce, 234 Minn. 290, 292, 48 N.W.2d 172, 174 (1951); see also Ohio Calculating, Inc. v. CPT Corp., 846 F.2d 497, 501 (8th Cir. 1988) (relying, in refusing to enforce agreement to negotiate, on principle of Minnesota law that "an alleged contract which is so vague, indefinite, and uncertain as to place the meaning and intent of the parties in the realm of speculation is void and unenforceable."). Thus, an "agreement to negotiate in good faith" is unenforceable where the parties have contemplated that the agreement is not the complete and final agreement governing the transaction at issue. Lindgren v. Clearwater Nat'l Corp., 517 N.W.2d 574, 574 (Minn. 1994). Furthermore, where the parties have agreed that an "agreement to negotiate" or letter of intent, in its entirety, is not a binding legal agreement, Minnesota courts have refused to enforce an individual provision of the letter as a freestanding "contract" promise. See Hansen v. Phillips Beverage Co., 487 N.W.2d 925, 927 (Minn. Ct. App. 1992) (rejecting argument that appellee breached promise in letter of intent to terminate negotiations with other prospective purchasers because letter of intent expressly stated, without exception, that it was not a legally binding agreement).

SCI focuses on the opening paragraph of the Letter of Intent -- particularly the sentence that reads "except as specifically set forth herein, this Letter of Intent shall not

constitute an agreement between the parties and no agreement shall be deemed to exist until execution of a definitive agreement" -- and contends that the Letter is unenforceable and cannot provide the basis for Plaintiffs' breach of contract claim. The November 1998 Letter is distinguishable, however, from the letters and agreements that the courts considered in the cases on which SCI relies. Here, ***parts*** of the Letter of Intent ***were*** expressly intended to be binding on the parties. SCI itself points out that the parties agreed to be bound by the duty to negotiate in good faith, the duty to keep negotiations confidential, and the restriction prohibiting the Hubers from seeking another purchaser as being binding on the parties. (Def.'s Mem. Supp. Mot. for Partial J. on the Pleadings at 3, 7.) SCI selectively omits, however, any mention of the "legally binding and enforceable agreement" that "the closing will take place no earlier than 50 days from execution of this Letter of Intent and no later than the earlier of 180 days from execution of this Letter of Intent or 90 days from execution of the definitive agreements." (Answer to Am. Compl., Ex. A at 2.) Thus, the parties agreed that sometime between December 26, 1998, and May 5, 1999, they would close on the transaction described in the Letter of Intent.[4] More importantly, the parties expressly indicated their intent that the agreement to close the deal within that time frame be ***legally binding and enforceable***. The Letter of Intent contains provisions that are more than simply an agreement to negotiate in good faith.

[4] The parties also agreed that, if definitive agreements were signed prior to February 4, 1999, the closing would occur earlier than May 5.

The Court does not decide at this time whether the Letter of Intent is ambiguous; it is sufficient for purposes of this motion, for the Court to conclude that it does not unambiguously mean what SCI argues it means. This Court cannot describe the Letter of Intent, with its agreement to close during a specifically defined time period and its "no-shop" provision, as being an agreement that "provides 'neither a basis for determining the existence of a breach nor for giving an appropriate remedy." Consolidated Grain and Barge Co. v. Madgett, 928 F.2d 816, 817 (8th Cir. 1991) (quoting Ohio Calculating, Inc. v. CPT Corp., 846 F.2d 497, 501 (8th Cir. 1988)). Nor can the Court deem the Letter of Intent to be merely a "summary of the course of negotiations, and an expression of willingness to later enter into a binding agreement." Schoffman v. Central States Diversified, Inc., 69 F.3d 215, 221 (8th Cir. 1995). The Letter of Intent includes a commitment that the transaction ***would be completed*** by a date that is ascertainable.

The Court concludes that dismissal of the Plaintiffs' breach of contract claim is not warranted. The Plaintiffs allege that SCI breached a contractual agreement "by failing to fully perform with regards to the purchase of Huber Funeral Homes." Viewing the facts alleged in the Amended Complaint in the light most favorable to Plaintiffs, it appears that they could establish that SCI failed to close on the transaction as contemplated in the Letter of Intent. Accordingly, the Court denies Defendant's motion with respect to the breach of contract claim.

## III. Promissory Estoppel

As an alternative to their breach of contract claim, the Plaintiffs also assert a claim for promissory estoppel. "Promissory estoppel is a creature of equity which implies 'a contract in law where none exist[s] in fact.'" Ruud v. Great Plains Supply, Inc., 526 N.W.2d 369, 372 (Minn. 1995) (quoting Grouse v. Group Health Plan, Inc., 306 N.W.2d 114, 116 (Minn. 1981)). Under Minnesota law, a party may recover under a theory of promissory estoppel if three things are established: (1) the existence of a clear and definite promise; (2) that the promisor intended to induce reliance and the promisee in fact relied to his or her detriment; and (3) the need to enforce the promise to prevent an injustice. See id.; Martens v. Minnesota Min. & Mfg. Co., 616 N.W.2d 732, 746 (Minn. 2000). With respect to the second element, "establishing the reasonableness of the reliance is essential to any cause of action in which detrimental reliance is an element." Nicollet Restoration, Inc. v. City of St. Paul, 533 N.W.2d 845, 848 (Minn. 1995).

SCI moves for judgment on the promissory estoppel claim on the same premise on which it attacked the breach of contract claim -- namely, that the "only binding terms of the Letter of Intent were the duty to keep the negotiations confidential, the duty to negotiate in good faith, and the clause restricting the Hubers from seeking other purchasers during the term of the Letter of Intent." (Def.'s Mem. Supp. Mot. for J. on the Pleadings at 8.) SCI argues that the Letter of Intent vitiates the existence of any clear and definite promise to buy Huber Funeral Homes. Similarly, SCI argues that the Letter

of Intent renders unreasonable any reliance by the Plaintiffs on a promise by SCI because the Letter states that the transaction was contingent upon certain events.

SCI's arguments again fail because of they do not address what appears to be an express commitment that a closing on the sale would occur between December 26, 1998, and May 5, 1999. The Minnesota Supreme Court has described the first element of a promissory estoppel claim -- the existence of a clear and definite promise -- as "requiring that the promisor should reasonably expect to induce action or forbearance on the part of the promisee." Martens, 616 N.W.2d at 746. Even if the parties' agreement regarding the closing is not a contractual obligation, it could certainly be characterized as a promise to close on the transaction during a specified window of time. Viewing the established facts in the light most favorable to the Plaintiffs, it appears that the Plaintiffs could establish that the promise to close on the deal was sufficiently clear and definite to have induced their action or forbearance (e.g., compliance with the "no-shop" provision). Nor does the Letter of Intent, viewed in its entirety, make it impossible as a matter of law for Plaintiffs to establish reasonable reliance on the alleged promise to purchase the Huber Funeral Homes.[5] The Court will deny SCI's motion as to the promissory estoppel claim.

---

[5] SCI also argues that the promissory estoppel claim must be dismissed because SCI has already paid to Plaintiffs certain expenses and costs. That argument, however, is based on new factual material asserted in the Answer – material that is deemed to be denied and cannot be considered on a motion for judgment on the pleadings.

## IV. Equitable Estoppel

Minnesota courts recognize that

> [e]stoppel is an equitable doctrine addressed to the discretion of the court and is intended to prevent a party from taking unconscionable advantage of his own wrong by asserting his strict legal rights. To establish a claim of estoppel, plaintiff must prove that defendant made representations or inducements, upon which plaintiff reasonably relied, and that plaintiff will be harmed if the claim of estoppel is not allowed.

Northern Petrochem. Co. v. U. S. Fire Ins. Co., 277 N.W.2d 408, 410 (Minn. 1979); Drake v. Reile's Transfer & Delivery, Inc., 613 N.W.2d 428, 434 (Minn. Ct. App. 2000) (citing Hydra-Mac, Inc. v. Onan Corp., 450 N.W.2d 913, 919 (Minn. 1990)).[6] Given the parallel elements of the equitable causes of action of promissory estoppel and equitable estoppel, most of the arguments SCI raises in support of dismissing the equitable estoppel

---

[6] The Minnesota Supreme Court has also described the application of equitable estoppel in the evidentiary context as follows:

> The doctrine of equitable estoppel may be asserted to bar a litigant from denying the truth of representations of fact previously made where the following requirements are met:
>
> (1) There must be a misrepresentation of a material fact;
> (2) The party to be estopped must be shown to have known that the representation was false;
> (3) The party to be estopped must have intended that the representation be acted upon;
> (4) The party asserting the estoppel must not have had knowledge of the true facts; and
> (5) The party asserting the estoppel must have relied upon the misrepresentation to his detriment.

Transamerica Ins. Group v. Paul, 267 N.W.2d 180, 183 (Minn. 1978).

claim mirror those discussed above in section III. For the same reasons the Court has rejected those arguments vis-a-vis the promissory estoppel claim, it rejects them with respect to the equitable estoppel claim.

SCI also contends that (1) under an equitable estoppel theory, money damages are not available, and (2) the Plaintiffs have not prayed for the enforcement of thc representation or inducement underlying the claim (i.e., an order directing SCI to purchase the Plaintiffs' business). Therefore, Plaintiffs fail to state a claim for relief under an equitable estoppel theory. The Minnesota Supreme Court has clearly stated that "'. . . estoppel is, according to the usual statement, a shield, not a sword. It does not furnish a basis for damages claims, but a defense against the claim of the stopped party.'" Snyder v. City of Minneapolis, 441 N.W.2d 781, 790-91 (Minn. 1989) (quoting Dobbs, Law of Remedies § 2.3, at 42 (West 1973)). The Plaintiffs have cited no case in which a plaintiff has been awarded money damages under a theory of equitable estoppel. Therefore, to that extent, SCI is correct.

SCI has failed to address, however, the final prayer for relief in the Amended Complaint, which asks for "such other and further relief as this Court deems just and proper." If the Court determines that enforcement of the representation or inducement underlying the assertion of equitable estoppel is necessary to prevent injustice, surely an order enforcing the representation or inducement would be "just and proper." The Court is not foreclosed from awarding equitable relief simply because a specific request for

such relief was not made in the Plaintiffs' Amended Complaint. SCI's argument is without merit.

## Conclusion

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED** that

1. the hearing in this matter, scheduled for Friday, June 21, 2002, is hereby **CANCELED**; and

2. the Defendant's Motion for Partial Judgment on the Pleadings (Doc. No. 14) is **DENIED**.

Dated: June 17, 2002

RICHARD H. KYLE
United States District Judge